Eastern District of Kentucky
FILED
JAN 24 2007
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-02-GWU

TERESA HOWARD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff filed her original application for Supplemental Security Income (SSI) benefits in 1998 (Tr. 65-70), and after two previous remands, most recently a Memorandum Opinion, Order, and Judgment dated February 16, 2005, Howard v. Barnhart, London Civil Action No. 03-57-GWU (E.D. Ky.) (Tr. 926-40), the case is once again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

1

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Howard

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Howard

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The specific purpose of the previous remand was to obtain additional testimony from a vocational expert (VE) regarding the effect of the plaintiff's third-grade reading ability, based on achievement testing. The Court had noted that the Commissioner's regulations, 20 C.F.R. Section 416.964(b), state that a numerical grade level will be relied upon only if there is no specific evidence to contradict it. (Tr. 938).[1] On remand, the ALJ conducted a new hearing and presented the VE with a hypothetical question asking whether a person of the plaintiff's age, third-grade reading ability, second grade arithmetic ability, and no work experience could perform any jobs if she were limited to "sedentary" level exertion, and could perform only simple, non-detailed tasks, with casual and infrequent public or co-worker contact, in settings involving direct, non-confrontational supervision and infrequent and gradual work changes. (Tr. 1080, 1084).[2] The VE testified that there were jobs

---

[1] The ALJ had specified a sixth grade education level. (Tr. 934).

[2] The plaintiff was born July 4, 1962, making her 43 years old at the time of the August 11, 2005 administrative hearing. (Tr. 1061)

7

that such a person could perform as a small products assembler, with 650 jobs in Kentucky and 30,000 nationally, small products inspector or tester, with 550 positions in Kentucky and 19,000 nationally, and general production worker, with 500 positions in Kentucky and 23,000 nationally. (Tr. 1080-81).

The plaintiff concedes on appeal that the ALJ followed the Court's order on remand, but raises objections to the job numbers and to the VE's assertion that her testimony was consistent with the Dictionary of Occupational Titles (DOT). The Court finds that both arguments have merit.

The Commissioner's regulations recognize that a very limited number of occupations are available to an illiterate individual with no work experience who is limited to sedentary level exertion, and her Medical-Vocational Guidelines (the "grids") provide for a finding of "disabled" for such individuals once they reach the age of 45. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Section 201.00(h)(1). The plaintiff, who was no more than 43 during the period at issue, clearly is not entitled to benefits under the grid rules; nevertheless, it was still the Commissioner's burden to prove that there are a significant number of jobs available in the economy to a person with her vocational profile. While there is no "one special number which is to be the boundary between a 'significant number' and an insignificant number of jobs," Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988), a total of only 1,700 jobs statewide and 72,000 nationally falls short of the 1,350 to 1,800 jobs in a nine-county area as

Howard

identified in Hall. The longstanding practice of this Court has been to require substantially larger numbers, whether regionally or nationally.[3]

Regarding the DOT, the plaintiff points out that, although the VE testified that all of the jobs listed had "reasoning, math, and language levels of 1," (Tr. 1084), Level 1 language development is defined in the DOT as being able to, inter alia, "recognize [the] meaning of 2,500 two or three syllable words [and] read at a rate of 95-120 words a minute" and being able to "print simple sentences containing subject, verb, and object, and a series of numbers, names, and addresses." DOT, Appendix C.[4] Level 1 mathematical development includes the ability to "add and subtract two-digit numbers[, m]ultiply and divide 10's and 100's by 2, 3, 4, 5 [and p]erform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." Id. The plaintiff argues that these requirements are greater than could be expected of a functionally illiterate person with second grade mathematics ability, despite the VE's specific statement that her testimony was consistent with the DOT. (Tr. 1083).

---

[3]As an example, this Court has previously determined that, in the factual situation prevailing in a certain case, 2,400 statewide jobs in Kentucky was not a "significant number." Shepherd v. Department of Health and Human Services, Lexington Civ. Action No. 94-155 (E.D. Ky.).

[4]As the Court noted in its prior Memorandum Opinion, the Sixth Circuit has recognized that a third-grade reading ability is equivalent to functional illiteracy in Skinner v. Secretary of Health and Human Services, 902 F.2d 447, 450 (6th Cir. 1990).

9

Howard

While the Sixth Circuit has held that an ALJ may accept the testimony of a VE despite conflicts with the DOT, Conn v. Secretary of Health and Human Services, 51 F.3d 607, 610 (6th Cir. 1995), the Commissioner's own subsequent Social Security Ruling (SSR) 00-4p provides that the ALJ "must elicit a reasonable explanation" for VE testimony which varies from that given in the DOT as part of his duty to fully develop the record. SSR 00-4p, p. 2. The Commissioner asserts that the ALJ did so by inquiring of the VE whether there were any conflicts, and receiving a negative answer. Commissioner's Motion for Summary Judgment, Docket Entry No. 22, p. 9. It is apparent, however, that there is an unresolved conflict which this testimony did not dispel.[5] This is also an issue that should be addressed on remand.

There may also be a similar issue reconciling the DOT's classifications regarding General Learning Ability (GLA). The plaintiff cites certain sources in her brief which are alleged to indicate that a person with a valid IQ score of 74 (Tr. 471) is in the lowest ten percent of the population, but does not attach copies to her brief.[6]

---

[5]The unpublished case of Martin v. Commissioner of Social Security, 170 Fed.Appx. 369 (6th Cir. 2006) limited the ALJ's duty under SSR 00-4p to resolve "apparent" conflicts. Id. at 5. Under the factual situation of this case, the Court agrees with the plaintiff that the ALJ reasonably should have been aware that the plaintiff's ability to do jobs despite her educational level was a critical factor given in the Court's prior remand for additional vocational testimony on this specific issue.

[6]The plaintiff also cites to a page of the DOT which purportedly defines a Level 5 GLA as "having an intellect falling at or below the 10th percentile nationally". Dictionary of Occupational Titles, (4th ed., 1991), p. 44435." Plaintiff's Brief, Docket Entry No. 21, p. 11, n. 4. Neither the Court's research or the staff of the Sixth Circuit Librarian could locate this page or definition in the fourth edition of the DOT, however.

10

Howard

The Commissioner responds that the DOT itself does not specifically equate GLA with IQ scores. The DOT clearly does contain references in each of its sections providing a GLA for each job classification. While it is difficult to determine whether the VE's testimony was facially inconsistent in this regard since no specific DOT numbers were given, the Court notes that at least one job classification apparently matching the VE's testimony, the sedentary job of Dowel Inspector, DOT Section 669.687-014, requiring only Level 1 reading and mathematics, also specifies a Level 4 GLA, which is defined as "lowest 1/3 [of the population] excluding bottom 10%." Moreover, this Court recently decided the case of Cody v. Barnhart, London Civil Action No. 05-612-GWU (E.D. Ky. December 15, 2006), in which a psychological Medical Expert (ME) testified that a person with borderline intellectual functioning would rank in the bottom ten percent of the population in intelligence. Although the Court here makes no finding that the ME's testimony in Cody would apply to any other case, it is an issue that counsel for the plaintiff may wish to clarify on remand.

The decision will be remanded for further consideration.

This the _____ day of January, 2007.

G. WIX UNTHANK
SENIOR JUDGE